**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

BARBARA IMOGENE MORGAN,

No. 96-2588

Claimant-Appellant,

and

CHARLES T. MORGAN,
Defendant.

Appeal from the United States District Court
for the Southern District of West Virginia, at Beckley.
Elizabeth V. Hallanan, Senior District Judge.
(CR-95-160)

Argued: October 29, 1997

Decided: August 17, 2000

Before WIDENER and ERVIN,* Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Senior Judge Phillips joined.

_____

*Judge Ervin heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Stuart Andrew McMillan, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellant. Betty Adkins Pullin, Assistant United States Attorney, Charleston, West Virginia, for Appellee. **ON BRIEF:** Leonard Knee, BOWLES, RICE, MCDAVID, GRAFF & LOVE, Charleston, West Virginia, for Appellant. Rebecca A. Betts, United States Attorney, Charleston, West Virginia, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

The present case arises from an application of 21 U.S.C. § 853, which provides for the forfeiture of substitute property when the government is unable to satisfy a judgment in its favor from the defendant's assets that constituted or were derived from the proceeds of criminal activity. The district court interpreted the third-party provision of the statute, which prohibits the government from forfeiting assets in which a third party had a property interest, to require that the third party had dominion and control over the asset. Consequently, the district court found that the government could forfeit the property in question because the third party did not have dominion and control over the assets. For the reasons that follow, we affirm.

I.

Under federal forfeiture law, the court can order a criminal defendant convicted of illegal activity to forfeit to the government proceeds gained and property used in the criminal activity or derived therefrom. 21 U.S.C. § 853(a). When the defendant has disposed of these assets or the government cannot locate these assets due to an act or omission of the defendant, the court may order substitute property of the defendant forfeited. 21 U.S.C. § 853(p). Section 853(n) of Title 21 provides a third party the opportunity to prevent forfeiture of substitute property by petitioning the court. The petitioner must assert her property interest in the substitute assets, and the court then must hold

2

a hearing on the claim. 21 U.S.C. § 853(n)(6). At the hearing, the burden is on the petitioner to establish by a preponderance of the evidence that:

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

> (B) the petitioner is a bona fide purchaser for value of the right, title or interest in property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

21 U.S.C. § 853(n)(6). Upon such a showing, the district court must amend the forfeiture order to respect the petitioner's property interest. 21 U.S.C. § 853(n)(6).

## II.

Charles T. Morgan (Mr. Morgan), petitioner's husband, was convicted on multiple counts for drug activity that began in 1992. Specifically, he was convicted of one count of conspiracy to distribute marihuana in violation of 21 U.S.C. § 846, two counts of distribution of marihuana in violation of 21 U.S.C. § 841(a)(1), one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(I), two counts of engaging in monetary transactions in criminally derived property with a value greater than $10,000 in violation of 18 U.S.C. § 1957(a), and one count of criminal contempt under 18 U.S.C. § 401(3). The jury also found that Morgan derived $220,754 from his marihuana conspiracy and that $40,000 was involved in or traceable to the § 1956 money laundering count in 1994, and that $54,000 was involved in or traceable to the § 1957 money laundering count. Consequently, the district court ordered Mr. Morgan to forfeit $220,754 pursuant to 21 U.S.C. § 853 and $94,000 pursuant to 18 U.S.C.

3

§ 982(a)(1).**1** The government could not obtain the money related to the charges for forfeiture, and the court ordered by <u>first order of substitution of assets</u> that the following property be substituted pursuant to 21 U.S.C. § 853(p): 1) a certificate of deposit in the name of Charles T. Morgan at Matewan National Bank; 2) a savings account at First Century Bank in the name of Charles T. or Barbara I. Morgan; 3) a certificate of deposit at the Bank of Raleigh in the name of Barbara or Charles T. Morgan; and 4) a checking account at the First Tennessee Bank in the name of Barbara I. or Charles T. Morgan.**2**

Barbara Morgan petitioned the district court pursuant to 18 U.S.C. § 853 asserting that she was a third party who had a property interest in the certificate of deposit established in 1988 at the Bank of Raleigh (certificate of deposit) and the checking account opened in 1994 at the First Tennessee Bank (checking account), and consequently the assets were not property of the defendant under § 853(p).**3** The district court held a hearing pursuant to 18 U.S.C. § 853(n) and denied her relief as to the certificate of deposit and the checking account finding that she failed to prove by a preponderance of the evidence that she had a property interest in these assets because she did not have dominion and control over them. Mrs. Morgan appeals the district court's finding with regard to the certificate of deposit and the checking account. The issue before us is whether Mrs. Morgan met her burden of proof in claiming that she had a legal right, title, or interest that was vested or superior to her husband's.

Jurisdiction in this case is proper under 28 U.S.C.§ 1291 as an

---

**1** The district court also ordered a cargo van related to the money laundering charges forfeited pursuant to 18 U.S.C. § 982(a)(1). The van was forfeited, and there is no dispute with regard to it.

**2** The district court also ordered that real property located in Greene County Tennessee be forfeited. Mrs. Morgan petitioned the court claiming a property interest in the real property, and the court rejected her petition after holding the 28 U.S.C. § 853(n) hearing. She has not appealed this finding of the district court.

**3** Mrs. Morgan's petition also asserted an interest in the certificate of deposit at Matewan National Bank and the savings account at First Century Bank. She withdrew her claims as to these assets at the § 853 hearing.

4

appeal from the district court's final forfeiture order. We review the district court's interpretation of a statute de novo, United States v. Letterlough, 63 F.3d 332, 334 (4th Cir.), cert. denied, 516 U.S. 955 (1995), and the district court's findings of fact for clear error. See United States v. $9,041,598.68, 163 F.3d 238, 246 (5th Cir. 1998), cert. denied, 67 U.S.L.W. 3768 (Jun. 21, 1999).

III.

The issue with regard to the checking account at the First Bank of Tennessee and the certificate of deposit at the Bank of Raleigh is the extent of any right, title, or interest of Mrs. Morgan in it under § 853(n)(6)(A), or whether a showing of the prohibited criminal activity prior to the establishment of the property interest in question makes unnecessary any further inquiry. Unfortunately, in evaluating Mrs. Morgan's petition with regard to these items, the language of the statute is less than clear. We recognize that some circuits have analyzed the question of whether a § 853(n) petitioner has a property interest by determining ownership under state law. United States v. Lester, 85 F.3d 1409 (9th Cir. 1996); see also United States v. Alcaraz-Garcia, 79 F.3d 769 (9th Cir. 1996); United States v. Certain Real Property Located at 2525 Leroy Lane, West Bloomfield, Michigan, 972 F.2d 136 (6th Cir. 1992); United States v. Stazola, 893 F.2d 34 (3d Cir. 1990). We do not think it is necessary, however, to consider the role of state law in the present case in light of Congressional intent.

In a case such as this, courts "may look to the legislative history for guidance in interpreting the statute." United States v. Childress, 104 F.3d 47, 53 (4th Cir. 1996). In the statute at issue in this case, Congress did not give guidance in the statute for determining the meaning of its words. Consequently, where Congress does not define an ambiguous term, we must determine what Congress intended. United States v. Reckmeyer, 836 F.2d 200, 205 (4th Cir. 1987). The intent of Congress in enacting the forfeiture provisions of § 853 was to "strip these offenders [racketeers and drug dealers] and organizations of their economic power." S. Rep. No. 225, reprinted in 1984 U.S.C.C.A.N. 3182, 3374. Therefore, Congress noted that § 853(n)(6) "should be construed to deny relief to third parties acting as nominees of the defendant or who knowingly engage in sham or fraudulent

5

transactions." S. Rep. No. 225, supra at 3392 n.47. In order to effectuate the legislative purpose of the statute, courts must evaluate whether the petitioner is a nominee[4] when reviewing the substance of a § 853(n) claim.

Failing to look beyond bare legal title or whether the petitioner has a property interest under state law would foster manipulation of ownership by persons engaged in criminal activity. United States v. 526 Liscum Drive, Dayton, Montgomery County, 866 F.2d 213, 217 (6th Cir. 1989). In light of the statutory purpose of§ 853, we hold that the district court properly employed a dominion and control test in its § 853(n)(6)(A) evaluation of whether Mrs. Morgan had a property interest sufficient to prevent forfeiture of the checking account and the certificate of deposit. 526 Liscum Drive, 866 F.2d at 217 (finding, in 21 U.S.C. § 881 forfeiture case, that where claimant held legal title to property, claimant must prove some dominion or control or other indicia of true ownership to demonstrate she was not nominal or straw owner); United States v. One 1945 Douglas C-54 (DC-4) Aircraft, etc., 604 F.2d 27, 28-9 (8th Cir. 1979) (holding, in 21 U.S.C. § 881 forfeiture, that owners of res have standing to challenge a forfeiture proceeding, but that bare legal title may be insufficient to establish ownership), cert. denied, 454 U.S. 1143 (1982).

A.

Applying the dominion and control test to the present case, we are of opinion that the district court correctly found that Mrs. Morgan lacked dominion and control over the checking account in Tennessee and the certificate of deposit in West Virginia. We first turn to the evidence supporting the checking account finding. The record reveals that Mrs. Morgan and her husband, the criminal defendant, established the checking account at the First Tennessee Bank in 1994. Although they opened the checking account as a joint account with both names on the account and Mrs. Morgan filled out a signature card, the events leading up to the opening of the checking account and the manner in which the account was treated subsequent to its open-

_____

**4** For the purposes of this opinion, the word nominee refers to nominal. Nominal is defined as "[e]xisting in name only, not in reality." Webster's II 798 (2d ed. 1988).

ing reveal that Mrs. Morgan was no more than a mere name on the account, with no power over the disposition of the account funds.

First, the checking account was opened to facilitate the purchase of the residence in Tennessee. The district court found that the forfeited Tennessee residence was purchased with illegally obtained funds for the purpose of furthering Mr. Morgan's illegal marihuana activity. Mrs. Morgan has not appealed the ruling as to the Tennessee residence. The First Bank of Tennessee gave the mortgage for the Tennessee residence and the checking account was used to pay the mortgage bills. In order to open this checking account, Mr. Morgan did the following: borrowed $40,000 from Sheila Spratt Morgan[5] promising to repay her with money from cashed-in certificates of deposit; deposited the borrowed $40,000 plus an additional $4,000 to start the checking account; deposited another $10,000 into the checking account and then used the $54,000 in total to pay the down payment for the Tennessee residence. At the time that Mr. Morgan opened the First Tennessee checking account and made the financing arrangements with the bankers there, Mrs. Morgan was present but had no idea about the logistics of the transactions. Mr. Morgan, himself, arranged to have subsequent mortgage payments by automatic deposit, and he even made an additional cash payment on the principal of the mortgage in June 1994 without Mrs. Morgan's knowledge. Mrs. Morgan never withdrew any money from the First Tennessee checking account, she never wrote any checks on the account, and shortly after the closing on the Tennessee residence, the bank statements for the checking account were sent only to Mr. Morgan at the Tennessee residence.[6]

Some of Mrs. Morgan's payroll checks were deposited into the

_____

[5] Mrs. Sheila Spratt Morgan was the bookkeeper for Morgan Sanitation, as well as the sister of Craig Spratt, Mr. Morgan's cohort in the marihuana distribution business. Craig Spratt was also convicted for the marihuana conspiracy. Craig Spratt was a certified public accountant and it was he who suggested the financial arrangements for purchase of the Tennessee residence to allay suspicion of its use in drug selling activity.

[6] Mrs. Morgan testified that Mr. Morgan was the one who lived at the Tennessee residence and that she had been there only five times before his arrest.

7

First Tennessee account, but as with the rest of the finances, Mr. Morgan "took the salary" and put it into the checking account because "[h]e said that he could manage it better than [Mrs. Morgan]." Mrs. Morgan was not in control of her own salary, the checking account, or any of the finances involved with the Tennessee residence. Despite the placing of Mrs. Morgan's name on the account and on the deed to the Tennessee residence as the sole owner, she was nothing more than a nominal owner of both. In fact, Mr. Morgan had a practice of acquiring property in Mrs. Morgan's name, when Mrs. Morgan knew little or nothing about these properties.[7] The district court also correctly found that the account was used "to give the impression that the Tennessee [residence] was being purchased with legitimate funds when, in fact, it was not." This finding, coupled with Mrs. Morgan's minimal involvement and knowledge regarding the checking account was further proof that Mr. Morgan used her name on the account the way he commonly used "nominee titleholders in an effort to conceal illegally obtained money." We are thus of opinion that the district court properly found that Mrs. Morgan was not vested with nor did she have a superior right, title, or interest in the First Tennessee checking account.

B.

We now turn to the certificate of deposit in the Bank of Raleigh in West Virginia. The district court properly considered the evidence and testimony presented at the criminal trial of Mr. Morgan, the jury verdict in that trial, Mrs. Morgan's § 853(n) petition and the government's response, and the evidence and testimony presented at the hearing on the petition. 21 U.S.C. § 853(n)(5). From that evidence, the district court concluded that Mrs. Morgan was "merely a nominee with no dominion and control over . . . the certificate of deposit."

_____

[7] In 1988, Mr. Morgan transferred title to eight pieces of land to Mrs. Morgan due to "land disputes" he had with neighbors. Later he also listed her as a lien holder on the purchase of a van that was used in the marihuana conspiracy. Mrs. Morgan claimed that she did not know that her name was on the lien for the van, yet she signed a release to remove her name from that same lien.

8

The district court's finding that Mrs. Morgan was a nominee is not clearly erroneous. Mrs. Morgan testified that the certificate of deposit was bought in 1988 with Mr. Morgan's $15,000 that he had received as part of his Black Lung lump sum settlement. The fact that all of the money used for the certificate of deposit belonged to Mr. Morgan is further evidence that Mrs. Morgan was only a nominal owner without any control over it. Mr. Morgan had received his Black Lung settlement in 1988 of $75,000 with which he purchased a van, household items, and the $15,000 certificate of deposit in the Bank of Raleigh. He placed the rest of the money in a box that he kept within the house. After the 1988-89 purchases, Mrs. Morgan testified that "he never let [her] spend no more of it." Mr. Morgan also received monthly Black Lung benefits which he allowed Mrs. Morgan to use to pay the bills and buy groceries, while he took her salary.

In addition, the district court had evidence before it that demonstrated that Mr. Morgan controlled the certificate of deposit and the use of the certificate of deposit. With the sole exception that Mr. Morgan permitted her to cash interest checks, made out in both names, from the certificate of deposit, Mrs. Morgan did not withdraw from, or use as collateral or deposit into, the certificate of deposit in Raleigh. Even at times when she was not paid a regular salary or when the family was having financial difficulties, she did not draw upon the certificate of deposit. There is also evidence that Mr. Morgan had shown Mrs. Morgan as a lien holder on a Ford van which had been subjected to the drug forfeiture laws and, although the lien was placed on the vehicle without her knowledge, she had released it at Mr. Morgan's instance. See n. 7, supra.

Accordingly, we affirm the conclusions of the district court that the certificate of deposit in the Bank of Raleigh was subject to forfeiture because Mrs. Morgan's name on the certificate along with Mr. Morgan's was merely nominal. She had no control over the money and the court's implicit finding that the certificate was not hers "rather than" his, see 21 U.S.C. § 853(n)(6)(A) was justified by the evidence. A large part of the evidence supporting the holding of the district court was heard orally in open court. The district judge saw the witnesses and heard them testify. Thus, her fact findings are entitled to special deference. See Anderson v. Bessemer City , 470 U.S. 564, 572-73 (1984); see Fed. R. Civ. P. 52(a).

9

The judgment of the district court appealed from is accordingly

<u>AFFIRMED</u>.

10