**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1066**

---

UNITED STATES OF AMERICA,

> Plaintiff – Appellee,

v.

ILANA BANGIYEVA,

> Claimant – Appellant,

and

EDUARD BANGIYEV,

> Defendant.

---

**No. 22-1099**

---

UNITED STATES OF AMERICA,

> Plaintiff – Appellant,

v.

IRINA ALISHAYEVA,

> Party-in-Interest – Appellee,

and

EDUARD BANGIYEV,

Defendant.

_____

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Liam O'Grady, Senior District Judge. (1:14-cr-00206-LO-6)

_____

Argued: May 3, 2023                                    Decided: August 2, 2023

_____

Before WILKINSON, AGEE, and HEYTENS, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded with instructions by published opinion. Judge Agee wrote in the opinion, in which Judge Wilkinson and Judge Heytens joined.

_____

**ARGUED:** Anna Bangiyev, THE BANGIYEV LAW FIRM PLLC, Rego Park, New York, for Appellant/Cross-Appellee. Aidan Taft Grano-Mickelsen, OFFICE OF THE UNITED STATES ATTORNEEY, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Jessica D. Aber, United States Attorney, Richmond, Virginia, Kevin Hudson, Assistant United States Attorney, Newport News, Virginia, Kimberly R. Pederson, Assistant United States Attorney, Gordon D. Kromberg, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant.

_____

2

AGEE, Circuit Judge:

Brothers Eduard and Arkadiy Bangiyev pleaded guilty to conspiring to participate in a racketeering enterprise, in violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(d). As part of the brothers' criminal judgments, the district court ordered the forfeiture of various real properties and financial accounts linked to the RICO conspiracy. Several third parties came forward to claim an interest in one or more of the forfeited assets, including Eduard and Arkadiy's sister, Ilana Bangiyeva ("Bangiyeva"), and Eduard's wife, Irina Alishayeva ("Alishayeva"). In a final order of forfeiture, the court rejected most of Bangiyeva's claimed ownership interests. As to Alishayeva, however, the court granted a life estate in and the exclusive use of one of the properties after finding that she owned a one-third interest in that property as a tenant in common with the Government, which (as a result of the forfeiture) owned the remaining two-thirds interest.

Bangiyeva now appeals, arguing that the district court clearly erred in failing to recognize her claimed ownership interests in various assets. We disagree and so affirm the final order of forfeiture in that respect.

Additionally, the Government cross-appeals, asserting that the district court erred as a matter of law in granting Alishayeva a life estate in the relevant property at the expense of the Government's majority ownership interest. In the Government's view, the court should have instead permitted it to seek the sale of the property and then divide the proceeds with Alishayeva based on their respective ownership interests. On this point we agree with

3

the Government and therefore vacate that part of the final order of forfeiture and remand for further proceedings.

## I.

When a person is convicted of violating federal RICO laws, he automatically forfeits to the United States his ownership interest in any property used to accomplish the RICO activity and any property that constitutes or was derived from proceeds of that RICO activity. 18 U.S.C. § 1963(a).

Sometimes property subject to forfeiture under the RICO statute is owned, at least in part, by third parties who may have lacked knowledge of the property's connection to the unlawful RICO activity. To protect the ownership interests of such innocent third parties, Congress provided a means in the RICO forfeiture statute for innocent owners to vindicate those interests. As relevant here, a third-party petitioner alleging an interest in forfeited property must "establish[] by a preponderance of the evidence" that either:

> (A)  the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture . . . ; or
>
> (B)  the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section.

4

*Id.* § 1963(*l*)(6).[1]

Once any third-party rights have been adjudicated, "the Attorney General shall direct the disposition of the [forfeited] property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons." *Id.* § 1963(f).[2]

## II.

Turning to the facts of this case, from 2004 to the time of their arrests in 2014, Eduard and Arkadiy, along with others, took part in a criminal enterprise responsible for producing tens of millions of dollars in counterfeit bills. The two brothers pleaded guilty to participating in a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). As part of their respective plea agreements, Eduard and Arkadiy agreed to forfeit to the Government all interests in any property derived from or traceable to RICO activity, or any qualifying substitute property. In a preliminary order of forfeiture, the district court identified several assets that met these criteria, six of which are relevant to this appeal:

- The real property known as 110-37 69th Ave., Forest Hills, NY;

- The real property known as 102-02 65th Rd., Forest Hills, NY;

---

[1] Title 21 contains a separate criminal forfeiture statute for drug-related offenses that includes many of the same provisions found in the RICO forfeiture statute. *See* 21 U.S.C. § 853. Among them is 21 U.S.C. § 853(n)(6), which requires third-party petitioners to satisfy the same standard set out in 18 U.S.C. § 1963(*l*)(6). For that reason, our prior decisions interpreting 21 U.S.C. § 853(n)(6) are instructive in interpreting 18 U.S.C. § 1963(*l*)(6) and vice versa.

[2] The RICO forfeiture statute also authorizes the Attorney General to take other actions with respect to forfeited property "to protect the rights of innocent persons which [are] in the interest of justice" and consistent with federal law. 18 U.S.C. § 1963(g)(1).

5

- The real property known as 98-21 67th Ave., Flushing, NY;

- The real property known as 98-23 67th Ave., Flushing, NY;

- 278 shares of stock in Park City Tenant's Corporation at 61-25 98th St., Apt. 10N, Forest Hills, NY; and

- $572,848.39 in a TD Bank account ending in 8926.

Bangiyeva filed a third-party petition asserting an interest in each of these six assets. Critically, Bangiyeva said that she acquired each interest, at least in part, using funds derived from a profitable gold investment that she and her brothers made. In particular, Bangiyeva testified before the district court that she and her two brothers took out home equity lines of credit on the 110-37 69th Ave. property totaling $730,000.[3] They then purportedly used $500,000 of those funds to purchase gold as an investment because it "was a very good price at that time." J.A. 733. According to Bangiyeva, Eduard and Arkadiy handled the investment on her behalf as "they were in the jewelry business." J.A. 733. She also testified that her brothers later sold that gold at a profit for more than $880,000 and that she used her one-third share of the proceeds to invest in all six subject assets, thereby giving rise, in whole or in part, to her claimed ownership interest in each asset.

In its final order of forfeiture, however, the district court unequivocally rejected Bangiyeva's gold-investment narrative as unsubstantiated by the record:

> There is simply no credible evidence outside of Ilana Bangiyeva's testimony that gold was ever purchased by her and Eduard and Arkadiy Bangiyev as an

---

[3] Consistent with other evidence in the record, the district court found that the home equity lines of credit totaled $750,000. But this $20,000 discrepancy is immaterial to our analysis.

6

investment or that it increased in value over time. There is no evidence of a gold purchase of that size, no evidence that the investment was used to acquire an interest in any real estate or put into an account, no evidence of any tax records or records of any kind that evidence income produced or capital gains accrued on any gold investment. The evidence presented by Ilana Bangiyeva does not reach a preponderance of the evidence.

*United States v. Bangiyev*, No. 1:14cr206, 2021 WL 5304187, at \*6 (E.D. Va. Nov. 15, 2021). This factual determination proved dispositive to much of Bangiyeva's petition as to the six assets at issue here.[4]

Alishayeva also filed a third-party petition asserting ownership interests in various forfeited assets, including the property at 110-37 69th Ave., which serves as Alishayeva and her children's primary residence and is the only asset relevant to the Government's cross-appeal.

Before the Bangiyev brothers' convictions, the 110-37 69th Ave. property's ownership was split by deed three ways: Arkadiy owned a one-third interest; Bangiyeva owned a one-third interest; and Eduard and Alishayeva jointly owned a one-third interest. Eduard and Alishayeva owned their one-third share as tenants by the entirety as to each other but, together, as tenants in common with Arkadiy and Bangiyeva as to the whole property.

The district court found that the 110-37 69th Ave. property afforded "a source of influence" over the Bangiyev brothers' RICO enterprise under 18 U.S.C. § 1963(a)(2)(D) and thus ordered it forfeited. Because the district court rejected Bangiyeva's one-third

---

[4] As explained below, Bangiyeva raised alternative grounds for relief on her alleged ownership interests in two of the properties. The district court found in her favor as to one of those properties but not the other.

7

ownership claim in the property, the Government acquired her one-third tenant-in-common interest in addition to Arkadiy's, giving it two-thirds fee simple ownership of the property. Eduard's interest in the one-third share that he and Alishayeva owned as tenants by the entirety was likewise forfeited to the Government but with little practical effect. Although the Government sought half of Eduard and Alishayeva's one-third share (i.e., a one-sixth share of the entire estate), with Alishayeva to retain the other half, the district court instead held that Alishayeva would retain the entire one-third share. But the court did not stop there. It further ordered that Alishayeva be allowed to remain on the property for the rest of her life so long as she remained married to Eduard, while permitting the Government only to file a lien on the property to secure its interest. In doing so, the court effectively enjoined the Government—the majority two-thirds owner—from exercising any of its property rights as a tenant in common with Alishayeva. The Government asked the court to reconsider its ruling and to instead direct that the property be sold and the net proceeds be split proportionally between it and Alishayeva. But the district court denied the request.

Bangiyeva now appeals, and the Government cross-appeals. Bangiyeva argues that the district court clearly erred in rejecting all or part of her asserted ownership interest in each of the six subject assets. The Government disagrees, asserting that the record contains ample support for the district court's factual findings as to Bangiyeva's petition. But in its cross-appeal challenging the court's judgment relating to Alishayeva's petition, the Government contends that the district court erred as a matter of law by prohibiting it from seeking the sale of the 110-37 69th Ave. property with proportional distribution of the net

8

proceeds. Exercising jurisdiction under 28 U.S.C. § 1291, we agree with the Government on both counts.

## III.

We review the district court's findings of fact for clear error and its conclusions of law de novo. *United States v. Morgan*, 224 F.3d 339, 342 (4th Cir. 2000).

Under the clear-error standard, we will uphold the district court's factual findings unless, after reviewing the whole record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Hall*, 664 F.3d 456, 462 (4th Cir. 2012) (citation omitted). Put another way, even were we convinced that we would have weighed the evidence differently in the first instance, our role is merely to assure ourselves that "the district court's account of the evidence is plausible in light of the record viewed in its entirety." *Id.* (citation omitted). Once we have that assurance, our inquiry is at an end and we must affirm.

## IV.

We begin with Bangiyeva's direct appeal, which is driven by her contention that the district court clearly erred in denying, in whole or in part, her asserted ownership interests in the six subject assets.

To recap, 18 U.S.C. § 1963(*l*)(6) provides two pathways of relief for a third-party petitioner seeking to establish an ownership interest in forfeited property. Under the first, the petitioner must show that, "at the time of the commission of the acts which gave rise to

9

the forfeiture," she had a legal interest in the subject property that "was vested in [her] rather than the defendant or was superior to any [legal] interest of the defendant." 18 U.S.C. § 1963(*l*)(6)(A). Under the second available pathway, the petitioner must prove that she was "a bona fide purchaser for value of the . . . interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 1963(*l*)(6)(B).

In evaluating a § 1963(*l*) claim, courts must "look beyond bare legal title or whether the petitioner [merely] has a property interest under state law." *Morgan*, 224 F.3d at 343 (interpreting 21 U.S.C. § 853(n)). Failing to do so, we have cautioned, "would foster manipulation of ownership by persons engaged in criminal activity." *Id.* Such a result would undermine Congress' primary purpose in establishing the RICO forfeiture regime: to "strip [RICO offenders and enterprises] of their economic power," including by "deny[ing] [§ 1963(*l*)] relief to third parties acting as nominees of the defendant or who knowingly engage in sham or fraudulent transactions." *Id.* (citation omitted); *see also United States v. Reckmeyer*, 836 F.2d 200, 203 (4th Cir. 1987) (explaining in the context of 21 U.S.C. § 853 that Congress designed the forfeiture scheme "to prevent defendants from escaping the impact of forfeiture by transferring assets to third parties"). Instead, we must ask whether the petitioner has shown that she exercised sufficient "dominion and control" over the asset. *In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005). Absent such a showing, the petitioner's interest will be deemed only nominal—that is, "existing in name only, not in reality," *Morgan*, 224 F.3d at 343 n.4 (cleaned up)—and thus insufficient under § 1963(*l*). *See Bryson*, 406 F.3d at 291.

10

With these principles in mind, we turn to Bangiyeva's asserted ownership interests in the subject assets, which she says she acquired as an innocent owner and/or a bona fide purchaser for value.

As noted above, Bangiyeva based her ownership interest in each asset, in whole or in part, on her testimony that she and her brothers invested in gold, that they later sold the gold at a profit, and that she used her share of the proceeds to invest in that asset. But the district court found no credible evidence in the record to corroborate Bangiyeva's gold-investment narrative and thus rejected any claim predicated on it. Consequently, the success of Bangiyeva's appeal depends in large part on whether the district court clearly erred in making that factual determination. And having reviewed the record in its entirety, we conclude that the district court did not clearly err in this regard.

To begin, Bangiyeva only marginally contests the district court's adverse factual finding with respect to her gold-investment narrative. Over the course of fifty-five pages, Bangiyeva's opening brief offers a single paragraph that directly challenges that finding. And that single paragraph provides essentially no substantive value. For example, Bangiyeva sweepingly asserts that the record contains "ample evidence of the gold investment," including "numerous invoices and receipts." Opening Br. 52. But she fails to discuss or preview even one of those alleged invoices or receipts, opting instead to provide a single citation to the record *spanning sixty-six pages* with no detailed explanation as to how or why those cited pages further her cause. We're thus left with little more than a bald assertion that fails to set out a case as to why the district court's adverse factual

11

determination was clearly erroneous. The burden was on Bangiyeva to make such a case, and she totally failed to carry that burden.

Nonetheless, despite Bangiyeva's haphazard approach, we have independently reviewed the cited documents, and the rest of the record, and are unable to discern any clear error on the district court's part. Although the cited pages from the record consist of several scanned receipts that appear to relate to gold purchases as well as a few bank statements, there is nothing that meaningfully connects those receipts and records to this case. The district court thus acted well within its authority to conclude that Bangiyeva failed to prove her gold-investment claim by a preponderance of the evidence.[5]

Given this conclusion, our analysis is fairly straightforward. On appeal, Bangiyeva's alleged ownership in five of the six assets—the properties at 98-21 67th Ave., 98-23 67th Ave., and 102-02 65th Rd.; the 278 shares in Park City Tenant's Corporation at 61-25 98th St., Apt. 10N; and the $572,848.39 in a TD Bank account ending in 8926—hinges entirely on her gold-investment narrative. So Bangiyeva's claim in each of those assets necessarily fails.

---

[5] Anticipating this result, Bangiyeva offers an alternative theory for the first time on appeal: If the $750,000 derived from the home equity lines of credit on the 110-37 69th Ave. property were not invested in gold, "the necessary implication" is that those funds would have been "available for other purposes," namely, for her use to acquire the asserted ownership interests in the subject assets. Opening Br. 25. And because the record reveals "no other use for the funds," *id.* at 18, and the district court never "posited a position as to what was done with the[m]," *id.* at 26, Bangiyeva says that it is proper to assume under a preponderance standard that she used those funds to acquire her claimed ownership interests. Bangiyeva never raised this (wholly speculative) argument below, so we do not consider it. *See In re Under Seal*, 749 F.3d 276, 285 (4th Cir. 2014).

Beginning with the properties at 98-21 67th Ave. and 98-23 67th Ave., the district court found that Bangiyeva acquired a one-half ownership interest in both properties in June 2009, replacing Arkadiy on the deed to each (Alishayeva owned the other one-half interest in both properties). Bangiyeva claimed that she acquired those interests as an innocent owner and bona fide purchaser for value using the alleged gold-investment proceeds. Having already rejected the gold-investment narrative, however, the district court denied both claims in full. As set out above, the district court did not clearly err in so ruling, so we affirm.

Next is the 102-02 65th Rd. property. In her petition, Bangiyeva claimed a $375,000 stake in this property as a bona fide purchaser for value, reflecting the amount that she alleged to have personally contributed toward the property's down payment when it was purchased for $880,000 in 2008.[6] Although the district court found that $375,000 was indeed withdrawn from one of Bangiyeva's bank accounts and used as a deposit on the 102-02 65th Rd. property, the court concluded that only $235,000 of this amount constituted legitimate funds as having been gifted to Bangiyeva by her mother. The court thus ordered the Government to credit Bangiyeva that amount from the property's post-forfeiture sale proceeds, and the Government does not contest that ruling on appeal. The district court declined to credit Bangiyeva the remaining $140,000 of the $375,000 down payment because she claimed that this additional amount reflected gold-investment

---

[6] Bangiyeva did not acquire a personal ownership interest in the property until 2009, when she purchased Arkadiy's one-half share for $10. In 2014, Arkadiy was added back to the deed for nominal consideration, reducing Bangiyeva's share to one-third.

proceeds. The district court's denial of this additional $140,000 is the only issue properly before us in this appeal as to the 102-02 65th Rd. property. And because we hold that the district court did not clearly err in rejecting Bangiyeva's unsubstantiated testimony regarding the alleged gold-investment proceeds, we must uphold the district court's disposition of Bangiyeva's claim as to that additional $140,000.

As to the 278 shares in Park City Tenant's Corporation at 61-25 98th St., Apt. 10N, the district court found that Bangiyeva and Arkadiy acquired these shares in 2011 for $105,000. Bangiyeva claimed a one-half interest as a bona fide purchaser for value, again claiming that she acquired her interest using the gold-investment proceeds. And once again, the district court denied her claim for lack of supporting evidence. For reasons already explained, we affirm that determination.

And finally, we consider the $572,848.39 in a TD Bank account ending in 8926. The district court found that this account was jointly held by Arkadiy and Bangiyeva. In her petition, Bangiyeva asserted a vested one-half interest in the account, alleging that all the deposited funds reflected gold-investment proceeds. Once more, the district court rejected that claim. And finding "no other income available to explain her assertions that she contributed to" the funds in the account—and further noting that Bangiyeva had "not presented any deposit slips to demonstrate otherwise"—the district court denied Bangiyeva's claim. *Bangiyev*, 2021 WL 5304187, at *10. As with the other claims discussed above, Bangiyeva fails to demonstrate on appeal that the district court committed clear error in so ruling. We therefore affirm on this claim as well.

14

In sum, the district court's rulings denying, in whole or in part, Bangiyeva's ownership claims in these five assets all stem from the court's conclusion that Bangiyeva failed to prove the truth of her gold-investment narrative. Because our review of the record reveals that such a conclusion was not clearly erroneous, we affirm the final order of forfeiture as to Bangiyeva's alleged interests in these five assets.

Bangiyeva's claim in the sixth and final asset at issue here, the 110-37 69th Ave. property, requires additional discussion, but we find that it too is meritless. The district court found that Eduard and Arkadiy purchased the 110-37 69th Ave. property in 2003 for $850,000, with a mortgage of $750,000. The record indicates that Bangiyeva acquired a one-third ownership interest in the property in August 2004—a few months after the RICO conspiracy began—for $10 consideration.[7] The mortgage on the property was paid off (as were the home equity lines of credit mentioned above) in June 2012, with Bangiyeva alleging that she paid off her share of the mortgage using the gold-investment proceeds. For the same reasons previously discussed, the district court rejected that claim, finding instead that the funds used to pay off the mortgage (and the home equity lines of credit) were obtained through a scheme devised by the Bangiyev brothers to defraud a jewelry

---

[7] As stated above, the district court concluded that this property afforded "a source of influence" over the Bangiyev brothers' RICO enterprise, rendering it forfeitable under § 1963(a)(2)(D). However, the district court did not indicate when the property became such a source of influence—that is, whether it occurred before or after Bangiyeva acquired her interest. Nonetheless, the answer to that question is ultimately immaterial here as we reject Bangiyeva's claim in any event.

15

customer out of $1 million.[8] And again, nothing in the record before us leads us to conclude that the district court clearly erred in that regard.

Bangiyeva argues that notwithstanding the mortgage issue, she still had a preexisting, or "vested," one-third ownership interest in the property under § 1963(*l*)(6)(A) given her placement on the deed as a one-third owner in 2004. Even assuming that she acquired this interest before the property ever afforded a source of influence over the RICO conspiracy, "bare legal title" or a mere "property interest under state law," we have said, is not determinative for purposes of analyzing a third-party petition under the RICO forfeiture statute. *Morgan*, 224 F.3d at 343. Rather, a § 1963(*l*) petitioner must demonstrate that she exercised sufficient dominion and control over the subject asset to establish a vested legal interest in the property. *See id.*

Evidence of any such dominion and control is insufficient here to warrant reversal.

To begin, Bangiyeva acquired her one-third interest in the property, which was purchased for $850,000, for a mere $10—a fact that she does not contest. Such de minimis consideration in and of itself is highly suggestive of nominal ownership. *Cf. id.* at 343–44 (holding that the criminal defendant's wife was only a nominal owner of a joint checking account where "the events leading up to the opening of the checking account and the

---

[8] Unrelated to the RICO conspiracy underlying the Bangiyev brothers' criminal convictions in the case at bar, this fraudulent scheme prompted the Government in 2009 to initiate civil forfeiture proceedings in the Eastern District of New York against the 110-37 69th Ave. and 102-02 65th Rd. properties. In 2011, the Government agreed to dismiss the action in exchange for $662,500; Bangiyeva and her brothers each signed the settlement agreement. Notably, the district court here found that the funds used to pay that settlement were proceeds derived from the Bangiyev brothers' RICO activities, not from any legitimate source of income from Bangiyeva or anyone else.

manner in which the account was treated subsequent to its opening reveal[ed] that [she] was no more than a mere name on the account, with no power over the disposition of the account funds").

Bangiyeva nonetheless highlights her testimony before the district court that she made later financial contributions toward the cost of the property's utilities and maintenance, which she claims demonstrates the requisite dominion and control. But the district court heard and considered this testimony and deemed it inadequate. And the question we must now decide is not whether we would have placed the same or greater weight on that evidence but whether, given what we know from the record, the district court's view of the evidence is plausible. We conclude that it is.

As we have previously recognized, the fact that a petitioner has made occasional financial contributions to a subject asset is not necessarily dispositive for purposes of satisfying the dominion-and-control test, particularly where other facts—such as Bangiyeva's acquiring her legal interest in this $850,000 property for only $10 consideration—are strongly indicative of mere straw ownership. *Cf. id.* at 344–45 (affirming the district court's holding that the petitioner lacked dominion and control over a joint checking account and certificate of deposit, even though she deposited some of her payroll checks in the checking account and cashed interest checks from the certificate of deposit, because the evidence showed that she had no real power over either account). And because Bangiyeva has failed to point to any meaningful evidence in the record otherwise demonstrating that she was more than just a nominal owner, we must affirm the district court's ruling denying Bangiyeva's claim as to this property.

17

In sum, after considering the entire record, we harbor no "definite and firm conviction" that the district court made a mistake in resolving Bangiyeva's petition. *Hall*, 664 F.3d at 462. Quite the opposite. The district court's findings of fact marshal ample record support. We have considered Bangiyeva's remaining assignments of error and find them meritless. Accordingly, we affirm the final order of forfeiture as to Bangiyeva's asserted ownership interests in the six subject assets.

V.

We next consider the Government's cross-appeal. As explained above, the Government challenges the district court's order allowing Eduard's wife Alishayeva to remain at the property at 110-37 69th Ave. for life as long as she remains married to Eduard, with the Government allowed only to file a lien on the property to protect its interest.

According to the Government, this order violates both New York state law and the RICO forfeiture statute. More specifically, the Government contends that by limiting its current interest in the property to a mere lien, the district court impermissibly stripped it of core property rights otherwise enjoyed by tenants in common under New York state law, including the right to seek the partition and sale of the property. The Government further argues that, irrespective of the state-law issue, the court's decision prevents it from carrying out the RICO statute's command that "the Attorney General . . . direct the disposition of the property by sale or any other commercially feasible means, making due provision for the rights of any innocent persons." 18 U.S.C. § 1963(f). The Government thus asks that

18

we vacate that portion of the final order of forfeiture and remand with instructions to the district court to modify the order so as to permit the Government to seek the sale of the property and split the proceeds proportionally with Alishayeva.

On de novo review, we agree with the Government's first argument based on New York state law and so vacate the relevant portion of the district court's order and remand on that basis. Accordingly, we need not address the Government's second argument regarding the RICO forfeiture statute.

To evaluate the Government's claim that the district court unjustifiability deprived it of its full range of ownership rights in the 110-37 69th Ave. property, we must first determine the property rights acquired by the Government as a result of the forfeiture. In making that determination, we are guided by two well-established principles: First, when the federal government takes ownership of forfeited property, it ordinarily acquires all the attendant rights of ownership such that it enjoys the same rights that the previous owner enjoyed. *See United States v. Harris*, 246 F.3d 566, 575 (6th Cir. 2001) (stating that when the federal government takes title to forfeited property, it "steps into the shoes of the [previous owner]" and acquires all his interest and rights in the property). Second, the property rights at issue in a federal forfeiture proceeding "are generally defined by reference to state law." *United States v. Oregon*, 671 F.3d 484, 491–92 (4th Cir. 2012). Thus, the Government's rights in the 110-37 69th Ave. property depend on the rights that were enjoyed by Arkadiy and Bangiyeva (whose ownership interests were forfeited to the Government) under New York state law (the law of the state in which the property is located).

19

As explained above, prior to the Bangiyev brothers' criminal convictions in this case, the 110-37 69th Ave. property's ownership was split three ways: Bangiyeva owned one-third; Arkadiy owned one-third; and Eduard and Alishayeva jointly owned one-third. Although Eduard and Alishayeva held their one-third share as tenants by the entirety as to each other, there is no dispute that the type of tenancy that governed the relationship between all three shares was a tenancy in common.

Under New York state law, each cotenant in a tenancy in common enjoys certain rights as to the other cotenants. These include the right "to use and enjoy the entire property as would a sole owner," regardless of whether the cotenant is "in actual possession of the premises," *Butler ex rel. Butler v. Rafferty*, 792 N.E.2d 1055, 1058 (N.Y. 2003), and, of particular importance to the Government's cross-appeal, the right to "seek physical partition of the property or partition and sale when he or she no longer wishes to jointly use or own the property," *Manganiello v. Lipman*, 905 N.Y.S.2d 153, 155 (App. Div. 2010); *accord* N.Y. Real Prop. Acts. § 901(1) (stating that a tenant in common "may maintain an action for the partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice to the owners"). As tenants in common, therefore, Arkadiy, Bangiyeva, and Eduard and Alishayeva (as a marital unit) each possessed these rights.

As a result of the forfeiture, the Government acquired Arkadiy's and Bangiyeva's respective one-third ownership interests in the property. In doing so, the Government stepped into their shoes and took on the status of tenant in common with Alishayeva, the

20

owner of the remaining one-third interest.[9] In the ordinary case, the Government would thus be entitled to all the same rights that New York state law affords all tenants in common, including the right "to use and enjoy the entire property as would a sole owner," *Butler*, 792 N.E.2d at 1058, and the right to "seek physical partition of the property or partition and sale," *Manganiello*, 905 N.Y.S.2d at 155.

In this case, however, the district court granted Alishayeva full and exclusive use of the property for the remainder of her life as long as she remains married to Eduard, giving her a life estate in the property on top of her one-third fee simple interest. Thus, as long as Alishayeva lives and remains married to Eduard, the Government is absolutely prohibited from "us[ing] and enjoy[ing] the entire property as would a sole owner," *Butler*, 792 N.E.2d at 1058, and from "seek[ing] physical partition of the property or partition and sale," *Manganiello*, 905 N.Y.S.2d at 155. Indeed, the *only* action allowed the Government during this indeterminate period is filing a lien on the property, essentially relegating the Government's status to nothing more than a creditor.

Given this reality, there can be no debate that the final order of forfeiture deprives the Government of fundamental property rights to which it would ordinarily be entitled as a tenant in common. The question we must decide, then, is whether that deprivation is justified. We hold that it is not.

---

[9] As noted above, the Government initially also sought half of the one-third share jointly owned by Eduard and Alishayeva (thus reflecting Eduard's forfeited interest), but the district court awarded Alishayeva the entire one-third share. Importantly, the Government did not contest that ruling in its motion for reconsideration, and it doesn't contest it on appeal. Thus, for purposes of this appeal, it is settled that Alishayeva owns a one-third fee simple share in the property.

At the outset, the district court's memorandum and final order of forfeiture did not cite any authority for its decision to grant Alishayeva a life estate to the exclusion of the Government. Later, when denying the Government's motion for reconsideration on this issue, the district court justified its decision by briefly discussing two cases, *United States v. Parcel of Real Property Known as 1500 Lincoln Ave.*, 949 F.2d 73 (3d Cir. 1991), and *United States v. Franco*, No. 5:14CR00011, 2017 WL 3187392 (W.D. Va. July 26, 2017). Aside from the fact that neither decision is binding on this Court, each is distinguishable and thus ultimately unpersuasive as a basis for denying the Government's established rights under state law.

In each of the cited cases, the court confronted an issue that is not presented here: how to treat an innocent spouse's *tenancy-by-the-entirety* interest in forfeited property.[10] *See 1500 Lincoln Ave.*, 949 F.2d at 76; *Franco*, 2017 WL 3187392, at *2. After careful consideration, both courts struck a balance between the federal government's interest in the immediate forfeiture of the guilty spouse's property interest and the innocent spouse's interest in maintaining her property rights. In short, the innocent spouse would retain exclusive use and possession of the whole property during her lifetime; would be "protected against any conveyance without . . . her consent or any attempt to levy upon the interest formerly held by the guilty spouse"; and would "retain[] the right to obtain title in

---

[10] Generally speaking, unlike a tenancy in common, a tenancy by the entirety is a form of concurrent ownership between married couples with a right of survivorship such that when one spouse dies, the surviving spouse is "vested solely with the fee simple interest he or she previously held concurrently." 7 Michael Allan Wolf, Powell on Real Property § 52.05[2] (2023).

22

fee simple absolute" if the guilty spouse predeceased her. *1500 Lincoln Ave.*, 949 F.2d at 78; *accord Franco*, 2017 WL 3187392, at *6. However, the government would immediately obtain whatever separate interest the guilty spouse might subsequently acquire (by operation of state law) as a result of the death of the innocent spouse or the severance of the tenancy. *See 1500 Lincoln Ave.*, 949 F.2d at 75, 77–78; *Franco*, 2017 WL 3187392, at *6 & n.10. Thus, each decision effectively maintained the status quo by preserving to the fullest extent the innocent spouse's tenancy-by-the-entirety rights, including the right of survivorship.

In this case, however, the tenancy that governs the relationship between the Government and Alishayeva (the innocent spouse) is a *tenancy in common*, a completely different tenancy from that at issue in *1500 Lincoln Ave.* and *Franco*. And indeed, the unique issue presented in both of those cases arose specifically *because* of the distinctive nature of tenancies by the entirety. Thus, *1500 Lincoln Ave.* and *Franco* rested on critically distinguishing facts and property rights.

Notably, the district court here recognized this important distinction, expressly "acknowledg[ing] that the type of tenancy at issue in the present case differs from that in *1500 Lincoln Ave.* and *Franco*." Order at 2, *United States v. Bangiyev*, No. 1:14-cr-00206 (E.D. Va. Mar. 9, 2022) (order denying motion for reconsideration), ECF No. 1045. Nonetheless, it found that "the logic of these cases is . . . compelling and guiding": "In both cases, the courts note[d] that, while forfeiture of the defendant spouse's interest to the Government may be appropriate, courts may also recognize and preserve the property rights of innocent owners." *Id.*

23

Were this case to turn on a tenancy by the entirety, we might agree with the district court concerning the persuasive value of *1500 Lincoln Ave.* and *Franco*'s holdings. But in light of the unmistakable difference in the type of tenancy at issue here, we are hard-pressed to discern any relevant guiding principles from those cases in the context of the Government's cross-appeal.

But even if those cases did provide some limited support, they still would not have justified the district court's order here. The district court relied on those cases for the general proposition that "courts may . . . recognize and preserve the property rights of innocent owners." *Id.* But the district court's ruling here went far beyond simply "preserving" Alishayeva's property rights as an innocent owner in a tenancy in common. Indeed, it granted her a windfall—at the Government's expense—by awarding her an additional life estate to the complete exclusion of her cotenant. There is no basis in New York state law (or federal law) for fashioning such an arrangement.

To put a finer point on it, assume that Eduard predeceased Alishayeva before the Government could prosecute this case. In those circumstances, Alishayeva would have obtained fee simple absolute in the one-third share that she held with Eduard as tenants by the entirety in the 110-37 69th Ave. property. *See V.R.W., Inc. v. Klein*, 503 N.E.2d 496, 498 (N.Y. 1986) (stating that in a tenancy by the entirety formed under New York state law, both spouses are "seized of the whole, and the death of one merely results in the defeasance of the deceased spouse's coextensive interest in the property," giving the surviving spouse "absolute ownership of the property"). But she would have remained a tenant in common with Arkadiy and Bangiyeva. And while her status as tenant in common

24

would have granted her certain rights under New York state law, like the right to "to use and enjoy the entire property as would a sole owner," *Butler*, 792 N.E.2d at 1058, and the right to "seek physical partition of the property or partition and sale," *Manganiello*, 905 N.Y.S.2d at 155, those rights would not be exclusive to Alishayeva. Arkadiy and Bangiyeva would be entitled to exercise those same rights, and Alishayeva would have no legal basis to prevent them from doing so.

But the district court's final order of forfeiture does not maintain that same balance of property rights. It instead grants Alishayeva *exclusive* use and possession of the property for life (as long as she remains married to Eduard) and limits the Government—the two-thirds majority owner—to a mere lien on the property. In other words, even though Alishayeva shares ownership of the property as a tenant in common, she is the only owner that can exercise any rights in the property during her lifetime and marriage to Eduard. New York state law does not afford Alishayeva that sweeping privilege, and a federal court cannot create such an entitlement by arbitrary fiat. Thus, far from preserving the ordinary and proper relationship between tenants in common, the district court reapportioned property rights between coequal owners. It expanded Alishayeva's rights well beyond what she would have otherwise been entitled to, while effectively stripping the Government of all the incidents of ownership. This the district court had no authority to do.

\* \* \* \*

In granting Alishayeva full and exclusive use of the 110-37 69th Ave. property for the remainder of her life and marriage to Eduard, the district court accorded the Government less than the full bundle of property rights that it would otherwise be entitled

25

to as a tenant in common under New York state law. The district court was without legal authority to do so. We therefore vacate the final order of forfeiture in that regard and remand for further proceedings recognizing the Government's full rights as a tenant in common under New York state law.

## VI.

For the reasons set out above, the district court did not clearly err in its disposition of Bangiyeva's § 1963(*l*) petition. However, the district court overstepped its authority in granting Alishayeva full and exclusive lifetime use of the 110-37 69th Ave. property, thereby precluding the Government—the majority two-thirds owner—from exercising its legal rights as a tenant in common under New York state law. Accordingly, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*
*WITH INSTRUCTIONS*

26